# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| ACORN ENGINEERING CO., INC., and WDMDB, LLC | ) ) ) |
| Plaintiffs, | ) ) Case No. 1:24-cv-13079 |
| v. | ) ) **JURY TRIAL DEMANDED** |
| AMICO CORPORATION, | ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiffs Acorn Engineering Company, Inc. ("Acorn") and WDMDB, LLC ("WDMDB") (collectively "Plaintiffs"), for their Complaint against Defendant Amico Corporation ("Defendant" or "Amico"), allege as follows:

## THE PARTIES

1. Plaintiff Acorn is a California corporation with a place of business at 42 Sherwood Terrace, Lake Bluff, IL 60044. Acorn is a leading provider of a broad range of innovative plumbing products, including plumbing fixtures and systems for institutional and commercial markets. Acorn's products have a broad array of applications, including their use in life-saving medical devices such as dialysis box systems.

2. Plaintiff WDMDB is an Arizona company with a place of business at 1838 North 23rd Ave., Phoenix, AZ, 85009.

3. On information and belief, Defendant Amico is a Canadian corporation, having a principal place of business at 85 Fulton Way, Richmond Hill, Ontario, Canada.

1

4. On information and belief, Amico is a supplier of medical products in Canada and the United States. Amico makes, uses, sells offers for sale or imports into the United States a dialysis box system.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. This Court has original subject matter jurisdiction over the entire action pursuant to U.S.C. §§ 1331 and 1338(a).

6. Venue is proper in any District pursuant to 28 U.S.C. § 1391(c)(3) because Amico is a foreign corporation not residing in the United States.

## PATENTS-IN-SUIT

7. On September 16, 2014, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 8,834,718 (the "'718" Patent), entitled "Dialysis Service Box," based upon an application by inventors Jeff Randall, Bryan DeWitt, Peter DeWitt, Rick Garcia, and Don Gustafson. A true and correct copy of the '718 Patent is attached hereto as Exhibit 1.

8. On November 28, 2017, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,827,363 (the "'363 Patent"), entitled "Dialysis Service Box," based upon an application by inventors Jeff Randall, Bryan DeWitt, Peter DeWitt, Rick Garcia, and Don Gustafson. A true and correct copy of the '363 Patent is attached hereto as Exhibit 2.

9. WDMDB, LLC ("WDMDB") is the owner, by assignment, of both the '718 Patent and the '363 Patent (collectively, "Patents-in-Suit").

10. Plaintiff Acorn is the exclusive licensee of the Patents-in-Suit.

11. Both the '718 Patent and the '363 Patent relate to a dialysis service box.

**PLAINTIFFS' PATENTED TECHNOLOGY**

12. Acorn is a nationally recognized provider of wholesale products for institutional and commercial markets. As a leading innovator and manufacturer in the industry, Acorn provides an array of stainless-steel products and systems, including dialysis systems.

13. Dialysis machines provide protection for patients in their most vulnerable states and are used by medical care providers in hospitals or healthcare facilities in which an individual to be treated undergoes a process of removing waste and excess water from the blood. Dialysis machines provide an artificial replacement for lost kidney function in individuals with renal failure.

14. Many dialysis systems include components located in separate remote locations, which creates numerous drawbacks. These drawbacks include increased response times by medical personnel, inconvenience in design and installation of the plumbing infrastructure, and increased cost in maintenance and operation in that these designs require more wall space, labor, and time to install and operate.

15. As disclosed in the Patents-in-Suit, Plaintiffs invented a novel and more efficient dialysis box system that eliminates many of these drawbacks. These patented systems run more efficiently, are less expensive, and are safer for medical personnel and patients alike.

16. Plaintiffs have complied with the requirements of 35 U.S.C. § 287.

**AMICO'S INFRINGING ACTIVITY**

17. As shown below, Amico makes, uses, sells, offers for sale, and/or imports a dialysis box ("Accused Product").

18. The Accused Product includes a casing enclosing a thermostatic mixing valve, reduced pressure backflow preventer, and trap primer, which eliminates the need for installation in a remote location.

19. On December 22, 2023, having learned that Amico intended to sell its dialysis box in the United States, WDMDB's counsel notified Amico that WDMDB owned the patent rights covering these boxes, including the Patents-in-Suit, and requested that Amico cease its infringing activities.

20. On June 14, 2024, Acorn's counsel also sent Amico a letter notifying Amico that it infringes the Patents-in-Suit, to which Acorn is the exclusive licensee.

21. Despite its knowledge of the Patents-in-Suit, Amico has continued to offer for sale the Accused Product, rendering its infringement willful.

## **COUNT I – INFRINGEMENT OF THE '718 PATENT**

22. Acorn realleges and incorporates by references each of the above paragraphs 1-21 as though fully set forth herein.

23. Amico makes, uses, sells, offers to sell, and/or imports dialysis box systems, including, but not limited to the Accused Product, and/or engages in activities related to dialysis box systems that directly infringe, either literally or through the doctrine of equivalents, and Amico contributes to and induces infringement of one or more claims of the '718 Patent.

24. For example, the Accused Product is a dialysis service box that infringes at least claim 1 of the '718 Patent, as shown in Figures 1 and 2 below.

4



**FIGURE 1 – EXTERNAL VIEW OF ACCUSED PRODUCT**



**FIGURE 2 – INTERNAL VIEW OF ACCUSED PRODUCT**

5

25. The Accused Product includes a casing having a top side portion, bottom side portion, rear side portion, left side portion, and right side portion, as shown in Figures 1 and 2 above.

26. The portions of the casing alleged in paragraph (25) collectively define an enclosure.

27. The Accused Product includes a supply inlet (2) attached to the casing for communication with a source of fluid, as shown in Figure 2 above.

28. The Accused Product includes a waste outlet (3) attached to the casing, which is in fluid flow communication with a waste disposal, as shown in Figure 2 above.

29. The Accused Product includes a dialysis supply and waste management system (2, 3, 4, 5, and 6) disposed within the enclosure of the casing, as shown in Figure 2 above.

30. The dialysis supply and waste management system of the Accused Product contains a plumbing arrangement in fluid flow communication with the supply inlet (2) at a first end of the plumbing arrangement and a connection port (4) formed at a second end of the plumbing arrangement that is configured to provide fluid to a dialysis machine, as shown in Figure 2 above.

31. The dialysis supply and waste management system of the Accused Product contains a backflow preventer (5) in fluid flow communication with the plumbing arrangement, to prevent retrograde flow of a fluid through the plumbing arrangement, as shown in Figure 2 above.

32. The dialysis supply and waste management system of the Accused Product contains a trap primer (6) in fluid flow communication with the plumbing arrangement for allowing the fluid to enter the waste outlet, as shown in Figure 2 above.

33. Accordingly, the Accused Product meets each and every limitation of at least claim 1:

> A dialysis service box comprising
>
>> a casing having a top side portion, a bottom side portion, a rear side portion, a left side portion and a right side portion that collectively define an enclosure (FIGS. 1 and 2),
>>
>> a supply inlet (2) attached to the casing, the supply inlet being in communication with a source of fluid;
>>
>> a waste outlet (3) attached to the casing, the waste outlet being in fluid flow communication with a waste disposal; and
>>
>> a dialysis supply and waste management system (2, 3, 4, 5, 6) disposed within the enclosure of the casing, the dialysis supply and waste management system comprising:
>>
>>> a plumbing arrangement in fluid flow communication with the supply inlet (2) at a first end of the plumbing arrangement and a connection port (4) formed at a second end of the plumbing arrangement configured to provide fluid to a dialysis machine;
>>>
>>> a backflow preventer (5) in fluid flow communication with the plumbing arrangement for preventing retrograde flow of a fluid through the plumbing arrangement; and
>>>
>>> a trap primer (6) in fluid flow communication with the plumbing arrangement.

34. On information and belief, in addition to making, using, selling, offering for sale, or importing the Accused Product, Amico induced its customers to use the Accused Product in violation of the '718 Patent. Amico knew of the '718 Patent at least as early as December 2023. On information and belief, Amico knew that its customers, in using the

Accused Product, were practicing the claims of the '718 Patent and acted with the specific intent to induce one or more of its customers to infringe the '718 Patent. Accordingly, Amico has induced and is inducing its customers to infringe at least Claim 1 of the '718 Patent.

35. Amico's acts of infringement have been willful. Amico knew of the '718 Patent at least as of December 2023. Amico has continued its infringement with knowledge of the Patents-in-Suit, and in willful disregard of the rights created thereunder.

36. Acorn has been and will continue to be irreparably harmed by Amico's infringement of the '718 Patent.

## COUNT II – INFRINGEMENT OF THE '363 PATENT

37. Acorn realleges and incorporates by reference each of the above paragraphs 1-36 as though fully set forth herein.

38. Amico makes, uses, sells, offers to sell, and/or imports dialysis box systems, including, but not limited to the Accused Product, and/or engages in activities related to dialysis box systems that directly infringe, either literally or through the doctrine of equivalents, and Amico contributes to and induces infringement of one or more claims of the '363 Patent.

39. For example, the Accused Product is a dialysis service box that infringes at least Claim 1 of the '363 Patent, as shown in Figures 1 and 2 below.

8



**FIGURE 1 – EXTERNAL VIEW OF ACCUSED PRODUCT**



**FIGURE 2 – INTERNAL VIEW OF ACCUSED PRODUCT**

9

40. The Accused Product includes a casing having a top side portion, bottom side portion, rear side portion, left side portion, and right side portion, as shown in Figure 1 above.

41. The portions of the casing alleged in paragraph (40) collectively define an enclosure.

42. The Accused Product contains a supply inlet (2) configured to communicate with a source of fluid, as shown in Figure 2 above.

43. The Accused Product includes a waste outlet (3) configured to communicate with a waste disposal, as shown in Figure 2 above.

44. The Accused Product includes a dialysis supply and waste management system (2, 3, 4, 5, and 6) disposed within the enclosure of the casing, as shown in Figure 2 above.

45. The dialysis supply and waste management system of the Accused Product contains a plumbing system (including the copper tubing) in fluid flow communication with the supply inlet (2), as shown in Figure 2 above.

46. The dialysis supply and waste management system of the Accused Product contains a connection port (4) configured to provide fluid to a dialysis machine, as shown in Figure 2 above.

47. The dialysis supply and waste management system of the Accused Product contains a backflow preventer (5) in fluid flow communication with the plumbing system and configured to prevent retrograde fluid flow through the plumbing arrangement, as shown in Figure 2 above.

48. The dialysis supply and waste management system of the Accused Product contains a trap primer (6) in fluid flow communication with the plumbing arrangement and

configured for delivering priming fluid to the waste outlet (3) by gravity flow, as shown in Figure 2 above.

49. The Accused Product includes a first adapter associated with the connection port (4), where the adapter is configured to supply fluid to the dialysis machine, as shown in Figure 2 above.

50. Accordingly, the Accused Product meets each and every limitation of at least claim 1:

> A dialysis service box comprising:
>
> a casing having a top side portion, a bottom side portion, a rear side portion, a left side portion and a right side portion that collectively define an enclosure (FIGS. 1 and 2);
>
> a supply inlet (2) configured to communicate with a source of fluid;
>
> a waste outlet (3) configured to communicate with a waste disposal; and
>
> a dialysis supply and waste management system (2, 3, 4, 5, and 6) disposed within the enclosure of the casing, the dialysis supply and waste management system comprising:
>
>> a plumbing system in fluid flow communication with the supply inlet (2);
>>
>> a connection port (4) configured to provide fluid to a dialysis machine;
>>
>> a backflow preventer (5) in fluid flow communication with the plumbing system and configured to prevent retrograde fluid flow through the plumbing arrangement; and
>>
>> a trap primer (6) in fluid flow communication with the plumbing arrangement and configured for delivering priming fluid to the waste outlet (3) by gravity flow;
>
> the dialysis service box further comprising a first adapter associated with the connection port (4), the first adapter configured to supply fluid to the dialysis machine.

51. On information and belief, in addition to making, using, selling, offering for sale, or importing the Accused Product, Amico induced its customers to use the Accused Product in violation of the '363 Patent. Amico knew of the '363 Patent at least as early as December 2023. On information and belief, Amico knew that its customers, in using the Accused Product, were practicing the claims of the '363 Patent and acted with the specific intent to induce one or more of its customers to infringe the '363 Patent. Accordingly, Amico has induced and is inducing its customers to infringe at least claim 1 of the '363 Patent.

52. Amico's acts of infringement have been willful. Amico knew of the '363 Patent at least as of December 2023. Amico has continued its infringement with knowledge of the Patents-in-Suit, and in willful disregard for the rights created thereunder.

53. Acorn has been and will continue to be irreparably harmed by Amico's infringement of the '363 Patent.

## JURY DEMAND

54. Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter a judgment in Plaintiffs' favor and against Amico, and provide Plaintiffs the following relief:

a. A judgment that Amico has infringed and continues to infringe, directly and/or indirectly, one or more claims of the '718 Patent and '363 Patent;

b. A judgment that Amico's infringement of both the '718 Patent and '363 Patent has been willful;

c. An order enjoining Amico, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from infringing the '718 Patent and '363 Patent;

d. A judgment awarding Plaintiffs all damages adequate to compensate Plaintiffs for Amico's infringement of the '718 Patent and '363 Patent, and such damages be trebled under 35 U.S.C. § 284 and awarded to Plaintiffs with pre-judgment and post-judgment interest;

e. A judgment that Amico be ordered to pay all costs associated with this action pursuant to 35 U.S.C. § 284;

f. A judgment that this case is exceptional and that Amico be ordered to pay Plaintiffs' reasonably attorneys' fees pursuant to 35 U.S.C. § 285;

g. An order that Amico notify purchasers and users of the Accused Product that the product infringes the '718 Patent and '363 Patent, and that Amico recall all infringing products sold or otherwise distributed, and that Amico remove the infringing products from all locations where those products have been installed; and

h. And such other and additional relief as this Court deems just and proper.

Dated: December 19, 2024

Respectfully submitted,

*/s/David L. De Bruin*
David L. De Bruin
Ron N. Sklar
Honigman LLP
321 N. Clark Street, 5th Floor
Chicago, IL 60654
(312) 701-9300
DDebruin@honigman.com
RSklar@honigman.com

*Counsel for Plaintiffs Acorn Engineering Co., Inc. and WDMDB, LLC*

John Picone
Gene Cherng
Spencer Fane LLP
2415 E. Camelback Road, Suite 600
Phoenix, AZ 85016
(602) 333-5440
jpicone@spencerfane.com
gcherng@spencerfane.com

*Additional Counsel for Plaintiff WDMDB, LLC*